UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JOHN CLAY,

                    Plaintiff,                       Case No. 1:14-cv-661

v.                                         Honorable Robert J. Jonker

UNKNOWN PARTY et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

## Factual Allegations

Plaintiff John Clay presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Central Michigan Correctional Facility.  He sues the following MDOC employees:  the unknown Deputy of the Bureau of Field Services; Area Manager Kimberly Luther; Parole Supervisor Marvin L. Bruin; Parole Agent Kristen Pigott; Replacement Parole Agent Kelly A. Gorham; Attorney Cassandra R. Green; and Attorney Law Examiner Sherrie D. Baidoon.

Plaintiff alleges that, on June 4, 2013, he was in custody at the Berrien County Jail on a parole violation.  He was transported to the Calhoun County Jail on June 7, 2013.  On June 14, 2013, Plaintiff filed a complaint about many things, including his transport to the Calhoun County Jail without prescribed medications, "internal affairs, medical details, special accom[m]odations, employee discipline, and not hinder [sic] plaintiff of preliminary parole hearing . . . which has constituted an abuse of discretion which is serious."  (Compl. ¶ 11, docket #1, Page ID#2.)  Plaintiff's complaint is not terribly clear, but he alleges that he was not given Naproxen in the jails, a medication that purportedly was prescribed.  He also alleges that Defendant Parole Agent Pigott failed to maintain a current list of his medications prior to his jail admission and that she commented, "IF IT'S NOT PSYCH MEDICATION IT'S OK AND NOT THAT SERIOUS." (*Id.* ¶ 9.)  In addition, Plaintiff alleges that Defendant Bruin stated in his June 20, 2013 response to Plaintiff's grievance that Plaintiff had not mentioned Naproxen as a medication.  Plaintiff complains that he explained to jail medical staff about his medications, and he claimed that his body had "shut down" and that the lack of medications "caused plaintiff's body to have complications and caus[ed] plaintiff's conditions to develop the course of a primary disease . . . ."  (*Id.* ¶¶ 14, 15, Page ID#3.)

He contends that Defendant Luther, in reviewing his second-step grievance, concluded that it did not appear that Plaintiff had been denied requested medications.

Plaintiff complains that Defendants were responsible for him receiving adequate medical care while he was housed in the jails.  He asserts that his account was charged, but he did not receive Naproxen, Pantoprazol, Simvastatin, and Zantac.  Plaintiff does not clearly indicate how long he was deprived of which medications, nor does he indicate what symptoms he was experiencing.

Plaintiff next complains about his parole violation proceedings.  He asserts that Defendant Gorham withheld evidence and did not summarize the parole violation report dated August 1, 2013, somehow conspiring with unknown others.  In addition, he claims that the hearing officer, S.D. Baidoon, violated the Michigan Constitution, Michigan Supreme Court precedents, and the Due Process and Equal Protection Clauses of the federal constitution when she "put plaintiff in a new category that shut door on any possibility of parole."  (*Id.* ¶¶ 24-25.)  Plaintiff further argues that her parole-revocation decision was not fairly conducted and was based on insufficient evidence.  Moreover, Plaintiff argues that his appointed attorney, Defendant Green, provided ineffective assistance of counsel.

Plaintiff seeks declaratory and injunctive relief, including expungement of his preliminary parole-violation hearing.  He also seeks compensatory and punitive damages.

### Discussion

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp.*

- 3 -

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009).  Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

- 4 -

### A.      Challenges to Parole Revocation

Plaintiff seeks a declaration that his preliminary parole-violation hearing violated the Due Process Clause.  He also seeks damages from the Unknown MDOC Deputy of the Bureau of Field Services, Luther, Gorham, Pigott, Baidoon and Green for their errors in relation to that proceeding.

A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983.  *See Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody).  Therefore, to the extent that Plaintiff's complaint challenges the fact that his parole was revoked and that he must serve an additional period of incarceration, it must be dismissed.  *See Adams v. Morris*, 90 F. App'x 856, 858 (6th Cir. 2004) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *see also Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of  *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

To the extent Plaintiff seeks injunctive, declaratory and monetary relief for alleged violations of Constitutional rights in the revocation of his parole, his claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, *or for other harm caused by actions whose*

*unlawfulness would render a conviction or sentence invalid,* a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *See Edwards v. Balisok*, 520 U.S. 641, 646 (1997) (emphasis in original). In *Heck*, the Supreme Court held that a state prisoner cannot make a cognizable claim under § 1983 for an allegedly unconstitutional conviction or for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless a prisoner shows that the conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87 (footnote omitted). The holding in *Heck* has been extended to actions seeking injunctive or declaratory relief. *See Edwards*, 520 U.S. at 646-48 (declaratory relief); *Clarke v. Stalder*, 154 F.3d 186, 189-90 (5th Cir. 1998) (claim for injunctive relief intertwined with request for damages); *Wilson v. Kinkela*, No. 97-4035, 1998 WL 246401, at *1 (6th Cir. May 5, 1998) (injunctive relief).

The principles espoused in *Heck* have been applied to § 1983 actions like Plaintiff's, challenging state parole revocation proceedings in the absence of a previous decision by a state or federal tribunal declaring the parole revocation invalid. *See Littles v. Bd. of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir. 1995) (per curiam); *Lovett v. Kinkela*, No. 98-3894, 1999 WL 644323, at *1 (6th Cir. Aug. 16, 1999); *Corsetti v. McGinnis*, No. 95-2061, 1996 WL 543684, at *1 (6th Cir. Sept. 24, 1996). Therefore, his claims arising out of his parole revocation against Defendants Luther,

Gorham, Baidoon and Green are barred under *Heck* until his parole revocation has been invalidated.[1]

They therefore are not cognizable in this proceeding.

### B.      Defendant Green

Plaintiff's claim against Defendant Green for any conduct, regardless of whether it is barred by *Heck*, is invalid for an additional reason.  Plaintiff cannot show that his court-appointed attorney acted under color of state law.  In *Polk County v. Dodson*, 454 U.S. 312 (1981), the Supreme Court held that defense counsel perform a private, not an official, function:

> In our system[,] a defense lawyer characteristically opposes the designated representatives of the State.  The system assumes that adversarial testing will ultimately advance the public interest in truth and fairness.  But it posits that a defense lawyer best serves the public, not by acting on behalf of the State or in concert with it, but rather by advancing "the undivided interest of his client."  This is essentially a private function, traditionally filled by retained counsel, for which state office and authority are not needed.

454 U.S. at 318-19 (footnotes omitted).  The *Polk County* Court further held that this is true even of the state-appointed and state-paid public defender.  *Id.* at 321.  The Court said that, once a lawyer undertakes the representation of an accused, the duties and obligations are the same whether the lawyer is privately retained, appointed, or serves in a legal aid or defender program.  *Id.* at 323.  The Court held that, even though a public defender is paid by the state, he or she does not act under color

---

[1]In addition, Defendant Baidoon, as a professional hearing officer for the State of Michigan, is entitled to absolute judicial immunity for the actions taken in her capacity as a hearing officer.  *See Horton v. Martin*, 137 F. App'x 773, 775 (6th Cir. 2005) (holding that hearing examiner and parole board members serving as hearing officials for parole revocation hearings are entitled to absolute judicial immunity); *Wright v. Rockett*, No. 86-5307, 1987 WL 36395, at *1 (6th Cir. 1987) (holding that parole hearing officer is entitled to absolute judicial immunity for actions taken in his or her judicial capacity); *Thomas v. Laws-Wright*, No. 13-14997, 2014 WL 651026 (E.D. Mich. Feb. 18, 2014) (applying *Shelly v. Johnson*, 849 F.2d 228, 230 (6th Cir. 1988) (absolute immunity for prisoner misconduct hearing officers), to Administrative Law Examiners sued for their parole-revocation decisions).  Similarly, parole field agents involved in probation-violation hearings generally are entitled to absolute immunity for their actions taken as prosecutors, *see Gause v. Ellis*, No. 13-11152, 2013 WL 5450290, at *6 (E.D. Mich. Sept. 30, 2013), and witnesses, *Spurlock v. Satterfield*, 167 F.3d 995, 1001 (6th Cir. 1999) ("It is well-settled that witnesses are granted absolute immunity from suit for all testimony provided in judicial proceedings.").

of state law in representing the accused. *Id.* at 325. Rather, defense counsel – whether privately retained or paid by the state – acts purely on behalf of the client and free from state control. *Id.* The Sixth Circuit has adhered to the holding in *Polk County* in numerous decisions. *See, e.g., Floyd v. Cnty. of Kent*, 454 F. App'x 493, 497 (6th Cir. 2012) (holding that, when performing traditional functions as counsel, a public defender is not a state actor); *Powers v. Hamilton Cnty. Pub. Defender*, 501 F.3d 592, 611 (6th Cir. 2007) (same); *Harmon v. Hamilton Cnty. Court of Common Pleas*, 83 F. App'x 766, 767 (6th Cir. 2003). Accordingly, Defendant Green did not act under color of state law, and no claim under § 1983 can be maintained against her.

### C.    Eighth Amendment

Plaintiff claims that Defendant Pigott denied him medical care in violation of the Eighth Amendment when she failed to fulfill her duty to document all of Plaintiff's prescribed medications, including Naproxen, Pantoprazole, Simvastatin, and Zantac. He also alleges that Pigott told him that, if the medication was not psychiatric, it was not that serious.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the

plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004). If, however the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898, the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834). Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff fails to sufficiently allege either component of the deliberate-indifference test. First, Plaintiff makes no allegations concerning the condition or conditions he alleges went untreated or concerning any symptoms he may have been suffering. As a consequence, he fails to allege that his medical need was sufficiently and obviously serious or that he was jailed under conditions that posed a substantial risk of harm. Further, his allegations concerning Defendant Pigott are limited to her negligence in failing to maintain an accurate list of medications for the Berrien County and Calhoun County Jails. Mere negligence is insufficient to support the subjective

- 9 -

component of the test. *Farmer*, 511 U.S. at 835. Moreover, in the limited circumstances in which Pigott is alleged to have acted, her comment concerning the importance of his medications does not elevate her negligent conduct to deliberate indifference. Plaintiff therefore fails to allege an Eighth Amendment violation.

### D. Supervisory Liability

Plaintiff alleges that Defendants Bruin, Luther, and the Unknown MDOC Deputy of the Bureau of Field Services are liable under § 1983 for their failures to supervise their subordinates and their mishandling of his grievances concerning the denial of his Naproxen and possible other medications. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Bruin, Luther, and the Unknown MDOC Deputy of the Bureau of Field

Services engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated:      July 17, 2014                        /s/ Robert J. Jonker
                                                 ROBERT J. JONKER
                                                 UNITED STATES DISTRICT JUDGE

- 11 -